**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| ELDRIDGE KEEN II MASSINGTON,<br><br>Plaintiff,<br><br>v.<br><br>EQUIFAX INFORMATION SERVICES, LLC, EXPERIAN INFORMATION SOLUTIONS, INC., TRANS UNION LLC, PROCOLLECT, INC.,<br><br>Defendants. | Civil Action No.: 3:26-cv-03450<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiff Eldridge Keen II Massington ("Plaintiff"), by and through the undersigned counsel, brings this Complaint against Defendants Equifax Information Services, LLC ("Equifax"), Experian Information Solutions, Inc. ("Experian"), Trans Union LLC ("Trans Union") (Collectively "CRA Defendants"), and ProCollect, Inc., ("ProCollect") (Collectively "Defendants") and alleges as follows:

## INTRODUCTION

1. This is an action to recover damages for violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq*. (the "FCRA").

2. Plaintiff also seeks to recover for violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq*. ("FDCPA").

## PARTIES

3. Plaintiff is a consumer as that term is defined in the FCRA and resides in Mesquite, Texas.

4. Equifax is a consumer reporting agency that maintains its principal place of business at 1550 Peachtree Street, Atlanta, Georgia 30309. Equifax can be served through its registered agent, Corporation Service Company, at 2 Sun Court, Suite 400, Peachtree Corners, Georgia 30092.

5. Experian is a consumer reporting agency that maintains its principal place of business at 475 Anton Boulevard, Costa Mesa, California. Experian can be served through its registered agent, C T Corporation System, at 330 North Brand Boulevard, Glendale, California 91203.

6. Trans Union is a consumer reporting agency that maintains its principal place of business at 555 West Adams Street, Chicago, IL 60661. Trans Union can be served through its registered agent, Illinois Corporation Service Company, at 801 Adlai Stevenson Drive, Springfield, Illinois 62703.

7. ProCollect is a debt collector and furnisher of credit information that maintains its principal place of business at 12170 N Abrams Rd Ste 100 Dallas Texas 75243. ProCollect can be served through its registered agent, John W Bowdich, at 8150 N. Central Expy Suite 500, Dallas, TX 75206.

## <u>JURISDICTION AND VENUE</u>

8. This Court has jurisdiction over Plaintiff's claims under 28 U.S.C. § 1331 and 15 U.S.C. § 1681p.

9. Venue is proper in this District under 28 U.S.C. § 1391(b).

## <u>FACTS</u>

10. On or about July 16, 2021, Plaintiff entered into a lease with Mt. Pentelicus Devco, LLC, doing business as The National ("The National"), for Unit 2905 at The National Apartments

in Dallas, Texas.

11. The lease identified Mt. Pentelicus Devco, LLC as the owner, required monthly rent of $2,565.00, and provided for a lease term ending September 26, 2022.

12. In March 2022, The National filed an eviction action against Plaintiff in the Dallas County Justice Court under Case No. JE-22-01764-H.

13. In the eviction action, The National alleged that Plaintiff had failed to pay rent arising from his occupancy of Unit 2905 and sought possession of the premises, unpaid rent, court costs, and attorney's fees.

14. After the Justice Court entered judgment, Plaintiff appealed the matter to the County Court at Law No. 1 of Dallas County under Case No. CC-22-01965-A.

15. On June 2, 2022, the County Court dismissed the eviction action.

16. Following the dismissal, The National entered into a new lease with Plaintiff for Unit 2205 at the same apartment community.

17. The new lease commenced on July 19, 2022, approximately six weeks after the eviction action was dismissed, and continued through October 16, 2023.

18. At the conclusion of the new lease, The National prepared a final account statement for Unit 2205 dated October 16, 2023.

19. The final account statement reflected a $24.19 credit at move-out, applied Plaintiff's $150.00 deposit against $125.00 in post-move-out charges, and showed a final refund due of $49.19.

20. After applying all charges, deposits, and credits associated with the subsequent tenancy, The National determined that Plaintiff was entitled to a $49.19 refund.

**Plaintiff Receives a Collection Letter from ProCollect**

21. In or around March 2026, Plaintiff received a collection letter from Defendant ProCollect concerning an alleged debt arising from his occupancy at The National Apartments.

22. ProCollect identified The National Apartments/ZRS as the creditor, identified Unit 2905 as the customer account, and demanded that Plaintiff pay $10,144.21 in full.

23. ProCollect represented that its client considered the alleged debt "true and valid," had retained ProCollect to recover the claimed loss, and demanded that Plaintiff remit payment in full immediately.

24. Plaintiff was confused and concerned because The National had entered into a new lease with him after the eviction proceeding was dismissed and later issued a final account statement showing a $49.19 refund without identifying any balance carried over from Unit 2905. Further, the eviction proceeding sought significantly less money than what ProCollect claimed he owed.

25. Plaintiff reviewed the documents ProCollect provided in support of its demand.

26. ProCollect enclosed an April 14, 2022, final account statement for Unit 2905 that listed a move-out balance of $14,141.71, applied a $3,997.50 security deposit, and calculated an alleged balance due of $10,144.21.

27. Plaintiff was therefore surprised and confused when, nearly four years after the Unit 2905 final account statement, ProCollect demanded immediate payment of $10,144.21.

**CRA Defendants Report that Plaintiff Owes an Outstanding Balance on the ProCollect Collection Account**

28. ProCollect's March 6, 2026 collection letter caused Plaintiff to become concerned that the alleged Unit 2905 debt was being reported in his consumer files.

29. On or about March 31, 2026, Plaintiff obtained an Experian consumer report and

learned that Experian was reporting a ProCollect collection account with an outstanding balance of $10,179.00.

30. Plaintiff also reviewed copies of his Trans Union and Equifax consumer reports, each generated on July 3, 2025, which showed that those Defendants were reporting the same ProCollect collection account with a balance of $10,179.00.

31. Specifically, Defendants were reporting the account as follows:

(a) PRO COLLECT
Original Creditor: 09 The national Apartments
Account number: 430650XXXXXXXX
Account type: Open account
Balance: $10,179
Date opened: April 26, 2022

32. The $10,179.00 balance reported by the CRA Defendants was inconsistent with ProCollect's March 6, 2026, collection letter and the account statement ProCollect supplied to substantiate the alleged debt.

33. ProCollect's collection letter and supporting account statement both identified the alleged balance as $10,144.21, which is $34.79 less than the balance reported by the CRA Defendants, an indication that ProCollect is an unreliable data furnisher.

34. Plaintiff was confused and distressed that Defendants were reporting an outstanding balance that was not supported by ProCollect's own collection records and was inconsistent with The National's subsequent final account statement showing a refund without any balance carried over from Unit 2905.

**Plaintiff's Dispute to the Credit Bureau Defendants Regarding the Inaccurate Credit Reporting**

35. Plaintiff was concerned that the derogatory collection account would continue to damage his credit standing and impair his ability to obtain credit.

36. On or about June 24, 2026, Plaintiff sent written disputes concerning the ProCollect collection account to Defendants Equifax, Experian, and Trans Union.

37. In each dispute, Plaintiff identified ProCollect, the account number beginning in 430650, The National Apartments/ZRS as the original creditor, the reported opening date of April 26, 2022, and the reported balance of $10,179.00.

38. Plaintiff explained that the reported collection account was inaccurate, incomplete, and unsupported by ProCollect's records.

39. Plaintiff also explained that The National subsequently entered into a new lease with him and later issued an October 2023 final account statement showing a $49.19 refund without identifying any balance carried over from Unit 2905.

40. In support of his disputes, Plaintiff enclosed the ProCollect collection letter and account statement, court records, lease documents, The National's October 2023 final account statement, and excerpts from his consumer reports.

41. Plaintiff requested that Equifax, Experian, and Trans Union reinvestigate the disputed information, correct the reporting, and for each to send him a corrected copy of his credit report.

**Defendants' Unreasonable Reinvestigations**

42. Equifax did not issue a substantive determination concerning the accuracy or completeness of the ProCollect collection account.

43. Instead, Equifax stated that the documents Plaintiff submitted were unreadable and requested clearer copies identifying the account name, account number, and specific basis for the dispute.

44. Equifax also stated that Plaintiff's proof of identity did not match the information

in his Equifax credit file and requested additional proof of identity and current address.

45. Equifax did not address the conflicting balances, the court records, the subsequent lease, The National's October 2023 final account statement, or the other documentary evidence Plaintiff submitted.

46. Thereafter, Defendant Equifax failed to correct or delete the ProCollect collection account from Plaintiff's credit file and instead continued reporting it with an outstanding balance of $10,144.00.

47. Experian did not provide Plaintiff with investigation results establishing that the ProCollect collection account had been deleted or corrected.

48. On July 24, 2026, Trans Union issued the results of its reinvestigation.

49. Trans Union did not delete the ProCollect collection account, but changed the reported balance from $10,179.00 to $10,144.00 and reported the past-due amount as $10,144.00.

50. Trans Union continued to report the account as placed for collection and identified the pay status as a collection account.

51. Trans Union's revised balance was merely a rounded version of the $10,144.21 amount stated in ProCollect's collection letter and supporting account statement.

52. Trans Union's revised reporting omitted twenty-one cents and still did not accurately report the amount stated in the documents ProCollect supplied to substantiate its demand.

53. CRA Defendants failed to adequately review all of the information provided to them by Plaintiff in support of Plaintiff's disputes.

54. CRA Defendants failed to conduct reasonable reinvestigations of Plaintiff's June 2026 disputes.

55. Thereafter, Defendants failed to correct or delete the ProCollect collection account from Plaintiff's credit files and instead continued reporting it.

56. CRA Defendants failed to conduct reasonable reinvestigations of Plaintiff's disputes, or any reinvestigation whatsoever, to determine whether the disputed information is inaccurate and record the current status of the disputed information, in violation of 15 U.S.C. § 1681i(a)(1)(A).

57. Plaintiff went in-person to the original creditor and asked them on three different occasions for the documents underlying the alleged debt. On each of the occasions, Plaintiff received a different response: (1) that the documents would be emailed to him, (2) that the responsible employee was unavailable, and (3) that the documents were no longer available because they switched systems and the documents were not available.

58. Plaintiff's disputes to the CRA Defendants made clear that the underlying records were not accessible, according to the creditor.

59. The FCRA at 15 U.S.C. § 1681i(a)(5)(A) requires that if an item of the information "cannot be verified, the consumer reporting agency shall… promptly delete that item of information." Despite Defendant CRAs not being able to verify the accuracy of the debt (as even the creditor lacked the underlying documents substantiating the debt), none of the Defendants deleted the information as the FCRA explicitly requires.

**ProCollect's Unreasonable Investigation**

60. Upon receiving a dispute from a consumer, the credit bureaus have an automated system that prepares ACDVs that are sent to the data furnisher reporting the credit account disputed by a consumer.

61. Data furnishers, like ProCollect, then have an obligation under the FCRA to

conduct a reasonable investigation with respect to the disputed credit account and review all relevant information provided by the consumer with the dispute to determine whether the disputed credit account information is accurate and/or belongs to the disputing consumer. See 15 U.S.C. § 1681s-2(b).

62. Upon information and belief, in or about June 2026, ProCollect received an ACDV and failed to conduct a reasonable investigation with respect to the information disputed by Plaintiff.

63. Upon information and belief, ProCollect failed to review all relevant information provided by one or more of the CRA Defendants regarding Plaintiff's disputes.

64. Upon information and belief, in or about June 2026, Defendant ProCollect verified the disputed information as accurate.

65. ProCollect violated 15 U.S.C. § 1681s-2(b) by failing to conduct a reasonable investigation with respect to the disputed information, failing to review all relevant information available to it, and failing to modify, delete, or permanently block the disputed information that was inaccurate, incomplete or unverifiable.

66. ProCollect continued to furnish the inaccurate data to the CRA Defendants.

67. As a result of the inaccurate reporting, and despite Plaintiff having resolved his subsequent tenancy with The National, which issued a final account statement reflecting a $49.19 refund and no outstanding balance carried over from Unit 2905, Defendants made it practically impossible for Plaintiff to obtain credit.

68. At all relevant times, Defendants were acting by and through their agents, servants, and/or employees who were acting within the course and scope of their agency or employment, and under the direct supervision and control of the Defendants herein.

69. At all relevant times, Defendants' conduct, as well as that of their respective agents, servants, and/or employees, was intentional, willful, reckless, grossly negligent and in utter disregard for federal law and the rights of Plaintiff herein.

70. As a standard practice, CRA Defendants do not conduct independent investigations in response to consumer disputes. Instead, they merely parrot the response of the credit furnisher despite numerous court decisions admonishing this practice. *See Cushman v. Trans Union Corp.*, 115 F.3d 220, 225 (3d Cir. 1997) ("The 'grave responsibilit[y]' imposed by § 1681i(a) must consist of something more than merely parroting information received from other sources. Therefore, a 'reinvestigation' that merely shifts the burden back to the consumer and the credit grantor cannot fulfill the obligations contemplated by the statute."); *Apodaca v. Discover Fin. Servs.*, 417 F. Supp. 2d 1220, 1230-31 (D.N.M. 2006) (noting that credit reporting agencies may not rely on automated procedures that make only superficial inquiries once the consumer has notified it that information is disputed); *Gorman v. Experian Info. Sols., Inc.*, 2008 WL 4934047, at *6 (S.D.N.Y. Nov. 19, 2008).

71. The CRA Defendants are aware of the shortcomings of their procedures and intentionally choose not to comply with the FCRA to lower their costs. Accordingly, the CRA Defendants' violations of the FCRA are willful.

72. As a result of Defendants' conduct, action, and inaction, Plaintiff suffered damage by loss of credit; loss of ability to purchase and benefit from his good credit rating; detriment to his credit rating; the expenditure of time and money disputing and trying to correct the inaccurate credit reporting; the expenditure of labor and effort disputing and trying to correct the inaccurate credit reporting; and emotional distress including the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

73. On August 25, 2026, American Express denied Plaintiff's application for an American Express Gold Card.

## CLAIMS FOR RELIEF

## COUNT I

### 15 U.S.C. § 1681e(b)

### Failure to Follow Reasonable Procedures to Assure Maximum Possible Accuracy

### (Against CRA Defendants)

74. Plaintiff re-alleges and incorporates by reference the allegations set forth in preceding paragraphs as if fully stated herein.

75. The FCRA imposes a duty on consumer reporting agencies to follow reasonable procedures to ensure the "maximum possible accuracy" of consumer reports, as follows:

> Whenever a consumer reporting agency prepares a consumer report, it shall follow reasonable procedures to assure ***maximum possible accuracy*** of the information concerning the individual about whom the report relates.

15 U.S.C. §1681e(b) (emphasis added).

76. On numerous occasions, CRA Defendants prepared patently false consumer reports concerning Plaintiff.

77. CRA Defendants readily sold such false reports to one or more third parties, thereby misrepresenting Plaintiff's creditworthiness.

78. CRA Defendants violated 15 U.S.C. § 1681e(b) by failing to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files they published and maintained concerning Plaintiff.

79. As a result of CRA Defendants' conduct, action, and inaction, Plaintiff suffered damages as described herein.

80. CRA Defendants' conduct, actions, and inactions were willful, rendering them liable for actual or statutory damages, and punitive damages in an amount to be determined by the

Court pursuant to 15 U.S.C. § 1681n. Alternatively, they were negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

81. Plaintiff is entitled to recover attorneys' fees and costs from CRA Defendants in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

**COUNT II**
**15 U.S.C. § 1681i**
**Failure to Perform a Reasonable Reinvestigation**
**(Against CRA Defendants)**

82. Plaintiff re-alleges and incorporates by reference the allegations set forth in preceding paragraphs as if fully stated herein.

83. The FCRA mandates that CRAs must conduct a reinvestigation "if the completeness or accuracy of any item of information contained in a consumer's file" is disputed by the consumer. *See* 15 U.S.C. § 1681i(a)(1). The Act imposes a 30-day time limit for the completion of such an investigation. *Id.*

84. The FCRA provides that if a CRA conducts an investigation of disputed information and confirms that the information is in fact inaccurate or is unable to verify the accuracy of the disputed information, the CRA is required to delete that item of information from the consumer's file. *See* 15 U.S.C. § 1681i(a)(5)(A).

85. CRA Defendants violated 15 U.S.C. § 1681i by failing to conduct a reasonable reinvestigation to determine whether the disputed information was inaccurate and record the current status of the disputed information, or delete the disputed information, before the end of the 30-day period beginning on the date on which they received the notices of dispute from Plaintiff; and by failing to maintain reasonable procedures with which to filter and verify disputed information in Plaintiff's credit file.

86. As a result of the CRA Defendants' conduct, action, and inaction, Plaintiff suffered

damage as described herein.

87. The CRA Defendants' conduct, actions, and inactions were willful, rendering them liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. Alternatively, they were negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

88. Plaintiff is entitled to recover attorneys' fees and costs from Defendants Equifax, Experian, and Trans Union in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

**COUNT III**
**15 U.S.C. § 1681s-2(b)**
**Failure to Conduct an Investigation of the Disputed Information and Review all Relevant Information Provided by the Consumer**
**(Against ProCollect)**

89. Plaintiff re-alleges and incorporates by reference the allegations set forth in preceding paragraphs as if fully stated herein.

90. ProCollect furnished the inaccurate information relating to Plaintiff to the national credit bureaus, including but not limited to Equifax, Experian, and Trans Union.

91. ProCollect violated 15 U.S.C. § 1681s-2(b) by failing to investigate Plaintiff's dispute, or otherwise by failing to fully and properly investigate Plaintiff's dispute(s), including but not limited to failing to review all relevant information regarding the same; by failing to permanently and lawfully correct its own internal records to prevent the re-reporting of the inaccurate information relating to Plaintiff to the national credit bureaus, including but not limited to Equifax, Experian, and Trans Union; and, by failing to cease furnishing inaccurate information relating to Plaintiff to the national credit bureaus, including but not limited to Equifax, Experian, and Trans Union.

92. As a result of ProCollect's conduct, action, and inaction, Plaintiff suffered damage as described herein.

93. ProCollect's conduct, action, and inaction were willful, rendering it liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. Alternatively, it was negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

94. Plaintiff is entitled to recover attorneys' fees and costs from ProCollect in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

**COUNT IV**
**Violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.***
**(Against ProCollect)**

95. Plaintiff re-alleges and incorporates by reference the allegations set forth in the paragraphs above as if fully set forth herein.

96. ProCollect regularly collects, or attempts to collect, debts owed or due or asserted to be owed or due to another, and uses instrumentalities of interstate commerce and the mails in its business, the principal purpose of which is the collection of debts. ProCollect is therefore a "debt collector" as defined by 15 U.S.C. § 1692a(6).

97. The debt at issue, an alleged balance arising from Plaintiff's residential lease, is a "debt" as defined by 15 U.S.C. § 1692a(5), in that it arose from a transaction for personal, family, or household purposes.

98. ProCollect violated the FDCPA, including but not limited to 15 U.S.C. §§ 1692e, 1692e(2)(A), 1692e(10), and 1692f, by representing the character, amount, and legal status of Plaintiff's debt in a false, deceptive, and misleading manner, including by demanding $10,144.21 in its March 6, 2026 collection letter while simultaneously maintaining and asserting a conflicting

balance calculation of $14,141.71, and by representing the debt as "true and valid" when ProCollect knew, or should have known, that the amount claimed was unverified and internally inconsistent, and has no basis in reality.

99. As a result of ProCollect's FDCPA violations, Plaintiff suffered actual damages as described herein.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that the Court enter a judgment awarding Plaintiff actual damages, statutory damages, punitive damages, and reasonable attorneys' fees and costs, and awarding Plaintiff such other and further relief as the Court may deem appropriate and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial on all issues so triable.

Dated: October 1, 2026,

*/s/ Nisan Zaghi*
Nisan Zaghi, Bar # 5711072NY
CONSUMER ATTORNEYS
68-29 Main Street
Flushing NY 11367
T: (718) 925-0276
F: (718) 247-8020
E: nzaghi@consumerattorneys.com

*Attorneys for Plaintiff,*
*Eldridge Massington*